John Brosnan
3680 Wilshire Boulevard
STE P04 -1313
Los Angeles, CA 90010
(310) 909-7580

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

John Brosnan,

Plaintiff,

v.

MEDMEN ENTERPRISES INC., ADAM BIERMAN, ANDREW MODLIN, BEN COOK, MICHAEL KRAMER, CHRIS GANNON, DAVID DANCER, DAVID CHIOVETTI, ADA LEE, DAN EDWARDS, MARY PERDEW, PLANET 13, LARRY SCHEFFLER, DENNIS LOGAN, OUTFRONT MEDIA INC., JEREMY J. MALE, MATTHEW SIEGEL, CLIVE PUNTER, RICHARD SAUER, JODI SENESE, IGNITE CANNABIS COMPANY, DAN BILZERIAN, KILROY REALTY CORPORATION, JOHN KILROY, JEFFREY C. HAWKEN, HERB, HIGH TIMES, MERRY JANE, NATIVE ROOTS, JOHN DOE LANDLORDS,
AND DOES 1 - 99.

Defendants.

Case No. CV 19-7037-MWF (MAAx)

COMPLAINT

## I. INTRODUCTION

1.  Plaintiff brings this Complaint for damages, injunctive relief, and any other available legal or equitable remedies, due to the illegal actions and unfair competition of Defendants.

2.  Defendants engage in the illegal advertisement, of marijuana.

3.  Plaintiff does not engage in the illegal advertisement, of marijuana.

1
COMPLAINT

4. Defendants in conspiracy with each other engage in the illegal advertising of marijuana in violation of 21 U.S.C. § 843.

5. Defendants activities involve the illegal advertising and sale of controlled substances (cannabis AKA marihuana or marijuana) which are express violations of existing federal law. By engaging in such activities Defendants gain an unfair economic advantage over Plaintiff's lawful activities which do not include the illegal advertising and sale of controlled substances.

6. Attorney General Jeff Sessions, took action on January 4, 2018, after California dispensaries started selling recreational marijuana. Sessions ripped up the nascent protections provided to the industry by the Obama administration. He rescinded the so-called Cole memo of 2013, the guidance from then-Deputy AG James Cole to federal prosecutors suggesting a hands-off approach to the state-legal industry.

7. There exists a finite amount of money available to the retail sector. According to Statista, (shttps://www.statista.com/statistics/748063/us-recreational-use-cannabis-sales/) marijuana sales from the year 2018 from marijuana outlets like those operated by Defendants, accounted for more than 10 Billion dollars in revenue. Every dollar illegally obtained by Defendants harms lawfully operating businesses.

8. Defendants knowingly and intentionally violate federal law and reap massive amounts of monies by being drug dealers or aiding and abetting said drug dealers.

9. Federal and state courts have sent tens of thousands of individuals to prison for crimes much less noteworthy than those of Defendants who are selling millions of dollars of marijuana in an open and notorious manner.

## II. PARTIES

10. John Brosnan ("Plaintiff"), operates an advertising business.

11. Outfront Media Inc. ("Outfront") is an advertising company that advertises marijuana.

12. MedMen Enterprises Inc. ("MedMen") is a business that advertises and sells marijuana.

13. Adam Bierman ("Bierman") operates MedMen.

14. Andrew Modlin ("Modlin") operates MedMen.

15. Ben Cook ("Cook") is the Chief Operating Officer of MedMen.

16. Michael Kramer ("Kramer") is Chief Financial Officer of MedMen.

17. Chris Gannon ("Gannon") is Chief Strategy Officer of MedMen.

18. David Dancer ("Dancer") is Chief Marketing Officer of MedMen.

19. David Chiovetti ("Chiovetti") is Senior Vice President of retail operations of MedMen.

20. Ada Lee ("Lee") is Executive Vice President of MedMen.

21. Dan Edwards ("Edwards") Senior Vice President of legal affairs of MedMen.

22. Mary Perdew ("Perdew") provides advertising support to marijuana related businesses.

23. Chris Visco ("Visco") owns and operates TerraVida Holistic Centers.

24. Planet 13 ("Planet 13") operates a marijuana dispensary in Las Vegas, Nevada.

25. Larry Scheffler ("Scheffler") operates Planet 13.

26. Dennis Logan ("Logan") operates Planet 13.

27. Jeremy J. Male ("Male") is the CEO of Outfront.

28. Matthew Siegel ("Siegel") is the Vice President and CFO of Outfront.

29. Clive Punter ("Punter") is the Executive Vice President of Outfront.

30. Richard Sauer ("Sauer") is Executive Vice President and General Counsel of Outfront.

31. Jodi Senese ("Senese") is Executive Vice President of Outfront.

32. Ignite Cannabis Company ("Ignite") is a company that sells marijuana.

33. Dan Bilzerian ("Bilzarian") is the founder and chairman of Ignite.

34. Kilroy Realty Corporation ("KRC") is a California corporation.

35. John Kilroy ("Kilroy") is the Chairman of the Board of Kilroy.

36. Jeffrey C. Hawken ("Hawken") is the Executive Vice President of Kilroy.

37. Herb ("Herb") provides advertising space to marijuana vendors.

38. Hightimes Holding Corp. ("HTC") is a Delaware Corporation that provides advertising space to marijuana vendors.

39. Merry Jane ("Maerry Jane") provides advertising space to marijuana vendors.

40. Native Roots ("NR") is a marijuana vendor located in Denver Colorado.

41. John Doe Landlords ("Landlords") Plaintiff does not currently know the names of the various landlords from whom Defendants rent premises, accordingly, Plaintiff shall collectively refer

to John Doe Landlords as Landlords.

42. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants were, and at all relevant times mentioned herein, the agent, employee, partner and/or representative of one or more of the remaining Defendants and was acting within the course and scope of such relationship. Plaintiff is further informed and thereon believes that each of the Defendants herein gave consent, ratified and or authorized the acts alleged herein to each of the other respective Defendants.

43. The true names and capacities of Defendants named herein as Does 1 through 99, inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff, who therefore sues said Defendants by fictitious names. Plaintiff will amend this Complaint to show such true names and capacities of Does 1 through 99, inclusive, when they have been determined.

### III. JURISDICTION AND VENUE

44. This Court has federal question jurisdiction under Title 28 because this case arises out of multiple violations of federal law.

### IV. ALLEGATIONS

45. Plaintiff engages in legal advertising.

46. Defendants engage in illegal advertising.

47. Defendants in conspiracy violate 21 U.S.C. § 843, an engage in illegal advertising.

### DEFENDANTS SELL MARIJUANA

48. Defendants advertise and sell illegal products, more specifically, marijuana.

49. Marihuana with an "h" is primarily sourced from the original spelling of the word, which first appears in US law in the Marihuana Tax Act of 1937, drafted by the infamous Harry Anslinger, head of the Bureau of Narcotics under FDR. Its origins are in , Mexican-Spanish, and the later modern spelling using a "j" was an uniquely American one. Canada spells it with an "h" as well, as does the federal government on occasion. Both "j" and "h" spellings are equally accurate, interchangeable and acceptable, as well as "cannabis" which is equally acceptable. 21 U.S. Code § 812 - Schedules of controlled substances uses the spelling "marijuana", however either is acceptable and known to refer to marijuana which is an illegal schedule 1 drug to possess, sell or advertise.

50. Pursuant to 21 U.S.C. § 812, marijuana is an illicit drug that is regulated and controlled pursuant to Schedule 1 of said statute.

51. It is illegal to possess marijuana.

52. Defendants possess marijuana.

53. It is illegal to sell marijuana.

54. Defendants sell marijuana.

55. Defendants are aware of 21 U.S.C. § 812.

56. Defendants knowingly violate 21 U.S.C. § 812.

57. Defendants intentionally violate 21 U.S.C. § 812.

58. Defendants in conspiracy violate 21 U.S.C. 812.

59. Pursuant to 21 U.S.C. § 843, it is illegal to advertise marijuana.

60. Defendants knowingly entered into a clear and tacit agreement to distribute marijuana to members of the public.

61. Defendants intentionally and with aforethought conspired to commit the crime of illegal distribution of marijuana to the public.

62. Defendants, for years, have engaged in an ongoing criminal conspiracy to advertse and distribute illegal Schedule 1 narcotics, namely, marijuana.

## DEFENDANTS ADVERTISE MARIJUANA FOR SALE

63. Pursuant to 21 U.S.C. § 843(c), it is illegal to advertise the sale of marijuana.

64. 21 U.S. Code § 843(c) states:

(c) Advertisement
(1) It shall be unlawful for any person to place in any newspaper, magazine, handbill, or other publications, any written advertisement knowing that it has the purpose of seeking or offering illegally to receive, buy, or distribute a Schedule [1] I controlled substance. As used in this section the term "advertisement" includes, in addition to its ordinary meaning, such advertisements as those for a catalog of Schedule [1] I controlled substances and any similar written advertisement that has the purpose of seeking or offering illegally to receive, buy, or distribute a Schedule [1] I controlled substance. The term "advertisement" does not include material which merely advocates the use of a similar material, which advocates a position or practice, and does not attempt to propose or facilitate an actual transaction in a Schedule [1] I controlled substance.
(2)
(A) It shall be unlawful for any person to knowingly or intentionally use the Internet, or cause the Internet to be used, to advertise the sale of, or to offer to sell, distribute,

or dispense, a controlled substance where such sale, distribution, or dispensing is not authorized by this subchapter or by the Controlled Substances Import and Export Act [21 U.S.C. 951 et seq.].
(B) Examples of activities that violate subparagraph (A) include, but are not limited to, knowingly or intentionally causing the placement on the Internet of an advertisement that refers to or directs prospective buyers to Internet sellers of controlled substances who are not registered with a modification under section 823(f) of this title.

65. Defendants are aware of 21 U.S.C. § 843.

66. Defendants knowingly violate 21 U.S.C. § 843.

67. Defendants intentionally violate 21 U.S.C. § 843.

68. Defendants knowingly violate 21 U.S.C. § 843, in depraved indifference to the public.

69. Defendants, in conspiracy, knowingly violate 21 U.S.C. § 843

## LANDLORDS KNOWINGLY RENT PROPERTIES TO DEFENDANTS IN VIOLATION OF 21 U.S.C. 856

70. Pursuant to 21 U.S. Code § 856 entitled "Maintaining drug-involved premises" it is illegal to knowingly rent premises for the purpose of distribution of marijuana.

71. Landlords, knowing that commercial space for marijuana related businesses is not as readily available as non marijuana related business commercial space, charge a higher rental price to marijuana related businesses and knowingly allow the marijuana related business to post advertising on the rented premises in violation of federal law.

72. 21 U.S.C. § 856 states in relevant part:

(a) Unlawful acts: Except as authorized by this subchapter, it shall be unlawful to—
(1) knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled substance; (2) manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance.

73. Landlords are aware that Defendants are openly selling marijuana from the properties that Landlords provide to Defendants.

74. Landlords allow Defendants to post advertising related to the sale of marijuana on the leased properties to marijuana businesses.

75. Landlords are aiding and abetting of the advertising and sale of marijuana by Defendants.

76. Landlords knew or should have known that Defendants were intending to advertise and distribute marijuana to the general public through properties rented to Defendants.

77. Landlords willfully participated in the unlawful plan to advertise and distribute marijuana to the public by agreeing to advance the purpose of the conspiracy by providing the property in which the conspiracy was carried out.

78. Landlords are aware that the advertisement and sale of marijuana is illegal.

79. Landlords rent the properties to Defendants at a rate higher than what Landlords normally make on the same or equivalent property.

80. Landlords are knowingly profiting from the sale of marijuana.

81. Defendants, and each of them, have satisfied the elements of the crime of possession with intent to distribute and conspiracy to distribute, (see Model Jury Instructions for 9th Circuit numbers 9:15 and 9.19)

82. Defendant's sale of marijuana to the general public is a direct, notorious and repugnant violation of 21 U.S.C. § 841.

83. Defendants know and are fully aware that they are violating federal law by selling marijuana to the general public.

84. Defendants can stop violating the law but refuse to.

### CODE OF CONDUCT FOR UNITED STATES JUDGES.

85. The Code of Judicial Conduct for United States Judges does not impose an express obligation on Judges to refer criminal activity that comes to the Court's attention. However, the Florida Committee on Standards of Conduct Governing Judges noted that the federal "misprision of felony statute" required, by its text, that any individual, aware of a felony under federal law, was required to make it "known" to a judge or other civil authority or face a fine or imprisonment. The unimpeachable quality of the information being presented by this complaint about the criminal conduct of Defendants herein, including the open, notorious and repugnant public sale of federally controlled substances without a license or authorization, weighs strongly in favor of making a criminal referral of the crimes presented hereby to the Court's attention. One judicial officer, Hon.

Richard A. Dollinger, (acting Supreme Court Justice, 2009, Rochester, New York) addressed the question of when a federal judge should make a criminal referral for disclosed criminal conduct of a party rather succinctly by stating:

> A judge should consider, for example, the severity and recentness of the matter. Surely, a judge has no duty to report each and every witness who has admitted to having once smoked marijuana. On the other hand, a judge is under an obvious imperative to notify the police of a witness who, in court admitted committing recent, unsolved serial murders. Between these two extremes lies the twilight zone of discretion. It is the nature of discretion that it can be abused both by action and inaction.

## COLE MEMORANDUM

86. The United States Department of Justice Reversed the "Cole Memorandum" Policy on Marijuana Enforcement on January 4, 2018.

87. Pursuant to a memorandum signed by Attorney General Jeff Sessions, dated January 4, 2018, the Department of Justice has returned to the "rule of law' and normalized the enforcement policy against marijuana violations that was in place prior to the institution of different "nationwide guidance" on marijuana enforcement. This change in Executive Branch policy must be considered as an indicator to the Judiciary of the merits of this complaint.

## WIRE FRAUD

88. Pursuant to 18 U.S. Code § 1343, entitled Wire Fraud, it is illegal to engage in financial transactions related to marijuana, 18 U.S.C. 1343 states:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

89. All Defendants obtained money via the sale of marijuana by causing money to be transmitted by means of wire.

90. Marijuana is classified as a Schedule 1 drug under the Controlled Substances Act (CSA).

Schedule 1 is the most severe category in the CSA. Because of marijuana's treatment under the CSA, any financial institution servicing an MRB can be accused of facilitating money laundering under the terms of the 1986 Money Laundering Control Act (MLCA). Even prior to the MLCA, the federal government relied on the help of financial institutions to fight against money laundering through the Bank Secrecy Act (BSA) of 1970. The BSA requires banks to "monitor their customer's [sic] transactions, file reports of cash transactions exceeding $10,000, and report certain suspicious activities that might indicate money laundering, tax evasion, or other criminal activities, such as financial transactions associated with illegal drug activity." The BSA applies to all banks in the United States, be they chartered under state or federal law, and it even applies to non-banks who engage in bank-like activity. The Treasury Department's Financial Crimes Enforcement Network (FinCEN) is responsible for enforcing the BSA. They have the authority to initiate civil enforcement actions against banks for violations of the BSA. Additionally, the Department of Justice (DOJ) may bring "criminal actions against banks and responsible individuals for willful violations of the BSA, seeking criminal fines, imprisonment, or both." Some of the well-known requirements of the BSA include currency transaction reports (CTRs) and suspicious activity reports (SARs). A bank must file a CTR with FinCEN for any cash transaction of $10,000 or greater, and a SAR must be filed by a bank whenever a transaction of $5,000 or more is suspected to be: Derived from illegal activities or is intended to support illegal activities; designed to evade any requirement of the BSA; or conducted for no business or lawful purpose.

91. Defendants received illegal drug money from the sale of marijuana.

92. Defendants thereafter deposited said drug money into Federally chartered bank accounts.

93. Defendants thereafter used said drug money to make payments to credit card companies.

94. Defendants thereafter used said drug money to write checks.

95. Defendants thereafter used said drug money to pay bills to third parties.

96. Defendants conduct as alleged herein satisfies the legal elements of wire fraud pursuant to 18 USC § 1343.

97. Defendants used the money from illegal drug sales to purchase advertising.

98. All Defendants have therefore committed wire fraud in the course and conduct of their

involvement in the sale, advertising or renting of premises for the purpose of the advertisement and sale of marijuana.

### KILROY

99. Kilroy is a publically traded company.

100. It is a violation of the Securities Exchange Commision rules and regulations for a publically traded company to be involved in violations of federal law.

101. Kilroy provides advertises marijuana in direct violation of federal law.

### FIRST CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES

### (VIOLATION OF 15 U.S.C. § 45 AND CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200)

### ALL DEFENDANTS

102. Plaintiff hereby incorporate by reference all paragraphs stated above.

103. Defendants' actions are in violation of 15 U.S.C. § 45.

104. Violation of 15 U.S.C. § 45 by Defendants is unfair to Plaintiff because it gives to Defendants an unfair economic advantage.

105. California Business and Professions Code §17200 prohibits unfair competition in the form of any unlawful, unfair, or fraudulent act or practice.

106. California's Unfair Competition Law prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "[I]t establishes three varieties of unfair competition — acts or practices which are unlawful, or unfair, or fraudulent." Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (internal quotation marks omitted).

107. In prohibiting "any unlawful" business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." Id. (internal quotation marks omitted); see also Davis v. HSBC Bank Nev., N.A., 691 F.3d 1152, 1168 (9th Cir. 2012). The business owners premise their "unlawful" UCL claim on Yelp's allegedly extortionate conduct.

108. California Business and Professions Code §17204 allows "any person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the Unfair Competition Law.

109. All Defendants in an open and notorious manner have carried out their conspiracy to violate federal laws.

110. All Defendants in an open and notorious manner have carried out their conspiracy which has harmed Plaintiff.

111. All Defendants with a depraved indifference to the harm they are causing the public have elected to violate federal law.

112. Because Plaintiff and Defendants are both in the retail business sector they both compete against one another for sales in the local economy of discretionary dollars.

113. Plaintiff does not engage in the retail sale of marijuana because to do so would be a violation of federal law.

114. Defendants voluntarily and knowingly engage in the illegal sale of marijuana.

115. John Doe Landlord 1-12 aid and abet the other Defendants in the illegal sale of marijuana by knowingly providing a commercial location for the other Defendants.

116. When Defendants sell marijuana to the public, Defendants remove discretionary dollars from the local economy that otherwise would be available for Plaintiff.

117. Defendant's illegal sale of marijuana provides Defendants with an unfair economic advantage over Plaintiff and said illegal activity constitutes an unfair and fraudulent practice within the meaning of California Business and Professions Code §17200 et seq., and 15 U.S.C. § 1125.

118. As a result of the illegal acts of Defendants, Defendants have reaped, and continue to reap, illegal and unfair profits at the expense of Plaintiff.

119. Defendant's should be enjoined from their illegal activity.

120. Plaintiff prays for an order permanently enjoining Defendants from the illegal sale of marijuana to the public.

121. Plaintiff prays for an award of damages against Defendants.

122. Plaintiff prays for judgment against Defendants, as more fully set forth below.

## SECOND CAUSE OF ACTION
## CIVIL CONSPIRACY
## ALL DEFENDANTS

123. Plaintiff hereby incorporates by reference all paragraphs stated above.

124. Defendants, and each of them, knowingly and willfully conspired and agreed among themselves to engage in the illegal and commercially unfair business practice of selling marijuana to the public via a commercial venue.

125. Defendants conspired to advertise the sale of marijuana.

126. Defendants know the advertising of marijuana is illegal.

127. Defendants knowingly violate federal law when advertising marijuana.

128. Defendants, and each of them, conspired to violate the duly enacted Federal laws prohibiting the commercial sale of marijuana.

129. All Defendants in an open and notorious manner have carried out their conspiracy to violate federal laws.

130. All Defendants in an open and notorious manner have carried out their conspiracy which has harmed Plaintiff.

131. Tort law and criminal law treat conspiracy in a fundamentally different manner. The object contemplated by a criminal conspiracy is a crime, and that of a civil conspiracy is a tort. In criminal law, the act of conspiring is a crime unto itself, regardless of whether the object of the conspiracy is actually effectuated. California Penal Code § 182 includes no requirement of carrying out such object crime. In contrast, under tort law, conspiracy is only actionable when its object is effectuated—and damages the plaintiff. Absent commission of the underlying tort, civil conspiracy is not a cause of action.

132. The California Supreme Court stated in Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal 4th 503 at 510-511 [28 Cal.Rptr.2d 475]:

133. Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort. "'A civil conspiracy, however atrocious, does not per se give rise to a cause of action unless a civil wrong has been committed resulting in damage.'

1  ... We have summarized the elements and significance of a civil conspiracy: "'The elements of an action for civil conspiracy are the formation and operation of the conspiracy and damage resulting to plaintiff from an act or acts done in furtherance of the common design...'"

134. The Supreme Court established that civil conspiracy can be a cause of action when the underlying tort takes place and damages a plaintiff.

135. Plaintiff has plead the elements of civil conspiracy in preparing this Complaint and relied upon Applied Equipment Corp. v. Litton Saudi Arabia Ltd., supra, as their authority for its elements, which are two: (a) "the formation and operation of the conspiracy," and (b) "damage resulting to plaintiff from an act or acts done in furtherance of the common design."

136. Plaintiff prays for judgment against Defendants as set forth more fully below.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT
## ALL DEFENDANTS

137. Plaintiff hereby incorporates by reference all paragraphs stated above.

138. Defendants obtain illegal profits by advertsing marijuana.

139. Plaintiff is harmed by Defendants' advertising of marijuana.

140. Defendants can stop advertising marijuana at any time but choose not to do so.

141. Plaintiff prays for judgment against Defendants as more fully set forth below.

## FOURTH CAUSE OF ACTION
## PERSONAL INJURY
## ALL DEFENDANTS

142. Plaintiff hereby incorporates by reference all paragraphs stated above.

143. Plaintiff is injured by the illegal acts of Defendants.

144. Plaintiff prays for judgment against Defendants as more fully set forth below.

## COSTS AND ATTORNEY FEES

145. Pursuant to 42 U.S.C. § 1988, Plaintiff seeks an award of their costs, including reasonable attorneys' fees, incurred in the litigation of this case. Moreover, Plaintiff requests an award of reasonable expenses including associated security and protection services due to the obvious fact that

Defendants are engaged in the sale of dangerous drugs and thereby are associated with a community that are often intoxicated with dangerous drugs and prone to engage in violence and other malicious conduct such that Plaintiff's reasonably require security services.

**WHEREFORE**, Plaintiff prays judgment against the defendants and each of them as follows according to proof.

1. Declaration from the Court that Defendants have violated 21 U.S.C. § 843;
2. Permanently enjoin Defendants from violating 21 U.S.C. § 843;
3. Declaration from the Court that Defendants have violated California Business and Professions Code §17200 et seq.;
4. Permanently enjoin Defendants from violating California Business and Professions Code §17200 et seq.;
5. Permanently enjoin Defendants from engaging in the sale of marijuana;
6. Permanently enjoin Defendants from the advertising of marijuana;
7. Permanently enjoin Defendants from providing advertsing avenues for the advertisement of marijuana;
8. Wage loss damages;
9. Loss of earning capacity;
10. General damages;
11. Actual damages;
12. Punitive damages;
13. Security related costs;
14. Disgorgement of all profits obtained by Defendants through the advertisement and sale of marijuana;
15. For such other and further relief as this Court deems just and proper.

DATED: June 28, 2019

John Brosnan





**UNITED STATES POSTAL SERVICE**®

TRACKED*
★ ★ ★
INSURED*
★

**PRIORITY**® **MAIL**

**FLAT RATE ENVELOPE**
ONE RATE ★ ANY WEIGHT*

PS00001000014  EP14F Oct 2018
OD: 12 1/2 x 9 1/2

**VISIT US AT USPS.COM**®
ORDER FREE SUPPLIES ONLINE

* Domestic only.   * For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.